Kaplan, Mitchell H., J.
This case arises out of an insurance coverage dispute between the plaintiffs, Orthofix Holdings, Inc. andBreg, Inc. (for the purposes of this motion it is unnecessary to distinguish between the plaintiffs who will collectively be referred to as Orthofix) and the defendant, Lexington Insurance Company. Their dispute principally turned on the meaning of the words “occurrence” and “event” as they appeared in two excess insurance policies issued by Lexington to Orthofix. The coverage issue was submitted to binding arbitration and an award issued before this action was filed on January 20, 2013. The award provided only declaratory relief; it had the effect of causing claims previously rejected by Lexington to fall within the coverage provided by these policies. This action is pled in two counts. Count I asks the court to confirm the arbitrators’ award. Count II, as originally pled, sought payment for the previously rejected claims. After this action was filed, the parties reached agreement on the amount of the claims that were covered by the policies, as construed in the award. Lexington, however, maintained that it had no obligation to pay interest on these claims from the date that they would have been paid, if Lexington had not denied them under the coverage position rejected by the arbitrators, while Orthofix pressed its right to interest under an amended Count II of the complaint.
*674 The case is before the court on Lexington’s motion to dismiss Count II for failure to state a claim on which relief may be granted. For the reasons that follow, the motion is DENIED.[1]
FACTS
The facts necessary to consider the issue raised by Lexington’s motion may be briefly summarized.
The policies contained an arbitration provision which stated in relevant part: “in the event of a disagreement as to the interpretation of this policy, it is mutually agreed that such dispute shall be submitted to binding arbitration before a panel of three (3) arbitrators . . .” After the coverage dispute arose, Lexington demanded arbitration of the disputed coverage issues. Its arbitration demand sought “declarations” as to the meaning of certain policy terms, as well as attorneys fees and costs and such other relief as the arbitrators deemed appropriate. Orthofix responded to the demand with an “Answering Statement and Counterclaims,” which sought declaratory relief that was, in effect, a mirror image of Lexington’s request for declarations and such other relief as the arbitrators deemed appropriate. This answering statement included the following reservation: “by submitting [these] disagreements as to policy interpretation to arbitration [Orthofix was not submitting or agreeing] to arbitration of any . . . claims ... or causes of action beyond the scope of the Arbitration provision in Lexington’s policies.”
As noted above, the arbitrators’ award provided exclusively declaratory relief which generally adopted Orthofix’s definitions of the disputed policy terms. The award recited that each side agreed to bear its own costs and fees and to share equally the arbitration expenses. No monetary damages of any kind were requested by either party or awarded.
DISCUSSION
Lexington asserts that because the award did not include an order or finding that Lexington pay interest on any claims previously rejected, Orthofix may not bring the instant Superior Court action seeking damages for interest due because of the alleged wrongful delay in paying these claims: “[Orthofix’s] claim for pre-award interest fails as a matter of law because it is precluded by the pre-award interest rule ...” Lexington reasons that the policies provided that the Commercial Rules of the American Arbitration Association shall govern the arbitration. And, even though, the arbitration was not conducted by the AAA, the arbitrators acknowledged that the AAA rules applied. Those rules expressly allow arbitrators to award interest. According to Lexington, although (i) the parties requested only declaratoiy relief regarding the meaning of certain policy terms, (ii) neither party sought monetary relief of any kind, and (iii) there was therefore no sum as to which the arbitrators could award or reject a claim for pre-award interest, this “pre-award interest rule” bars any recovery of interest in the instant case.
This so-called “pre-award interest rule” suggested by Lexington is manifestly inapplicable in the present case. In Bolman v. Plymouth Rock Assurance Corporation, 82 Mass.App.Ct. 135, 139 (2012), the Appeals Court noted “that the entitlement of a party to pre-award interest is a decision that is within the purview of the arbitrators. Generally, pre-award interest compensates the prevailing party for loss of the use of money that party, as determined by the judgment, should have had in the first place and not been obliged to have chased. In that way compensatory damages are truly compensatory and, in monetary terms the winner is no less well-off for the chase.” (Internal citations and quotations omitted.) It then went on to state that “the fundamental purpose of arbitration is to avoid court proceedings and is better served by considering, in the absence of an explicit agreement to the contrary, pre-award damage claims, including interest, to have been submitted to arbitration.” Id. (internal citations and quotations omitted). The principle expressed in Bolman, and the several cases cited at 82 Mass.App.Ct. at 139, is inapplicable to the present circumstances. In all of those cases, the plaintiff was awarded damages and the question of whether to award pre-award interest was assumed to have been decided by the arbitrator and incorporated into the amount of damages awarded, unless the parties had expressly agreed to leave the interest issue to the court in their contract or the award itself expressly stated that the arbitrators were not deciding the interest issue. Id. at 141.
In the present case, it is perfectly clear that neither party to the Lexington/Orthofix arbitration presented any kind of damage claims to the arbitrators for their resolution. Rather, they asked only that the arbitrators interpret the policy in light of the nature of the claims that had been submitted for payment by Orthofix and to declare whether those kinds of claims were covered under the policy. There was no monetary award as to which the arbitrators could award interest, or damages evidence introduced, so that the parties could arbitrate the date on which interest should begin to accrue.
Indeed, the AAA rules permit arbitrators to award money damages to the parties, in addition to interest. Under the rationale offered by Lexington, since the arbitrators did not award any damages to Orthofix, if Lexington had not voluntarily agreed to pay the amount of the claims as to which it disclaimed coverage prior to the arbitration, under its rejected interpretation of the policies, Orthofix could not bring a claim for damages as the “doctrine of claim preclusion” would also bar such an action. According to Lexington, having not asked for monetary damages in the arbitration, Orthofix would simply have no remedy to recover on these wrongfully denied claims, let alone interest for their delayed payment. Clearly, by seeking declaratory relief only, the parties anticipated that they would address the issue of damages after the arbitration, informed by its outcome, just as they would if they had sought declaratory relief in a court of competent jurisdiction without seeking a monetary award for damages.[2]
*675 While there is no Massachusetts appellate decision on point, in Andrew Robinson Int’l v. Harford Fire Ins., 547 F.3d 48 (1st Cir. 2008), the First Circuit Court of Appeals undertook an exhaustive review of case law concerning the question of whether, under Massachusetts law, a parly who was successful in obtaining declaratory relief from a court with respect to its coverage rights under an insurance policy, could later bring an action for damages based upon that declaration of rights. The First Circuit noted that the plaintiff s position was that adopted in section 33 of the Restatement (Second) of Judgments:
“A valid and final judgment in an action brought to declare rights or other legal relations of the parties is conclusive in a subsequent action between them as to the matters declared.” Under this prescription, “a plaintiff who wins a declaratory judgment may go on to seek further relief, even in an action on the same claim which prompted the action for declaratory judgment.” Id. cmt. C. ‘This further relief may include damages which had accrued at the time the declaratory relief was sought; it is irrelevant that the further relief could have been requested initially.” Id.
Id. at 53. It then went on to hold that in its view the Massachusetts Supreme Judicial Court would adopt section 33 and “would [not] construe a final judgment in a declaratory action that did not raise coercive claims as barring a subsequent damages action asserting such claims, even though the latter arose out of the same transaction.” Id. at 59. This court agrees. If the parties had sought declaratory relief concerning the coverage issue in the Superior Court, and later were unable to resolve a dispute concerning the amount of covered claims due the insured or the amount of interest, if any, due on the covered claims, res judicata would not bar the insured from bringing an action for damages, thereby denying the insured any remedy for the insurer’s breach of contract. The fact that, in this case, declaratory relief was awarded by an arbitrator instead of a judge ought not to change this principle.
While, once again, there is no Massachusetts appellate decision directly on point, section 84(1) of the Restatement (Second) of Judgments states, in relevant part, “a valid and final award by arbitration has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court. ”[3] Where parties seek a declaration of their rights under a contract, and make no request that the arbitrators determine the amount of damages to which either party would be entitled depending on the declaratory relief entered, with the expectation that the parties would thereafter attempt to resolve any dispute concerning any damages due as a consequence of the arbitrators’ declarations, it would be perverse to hold that since they opted to arbitrate the interpretation dispute rather than litigate it in court, the injured parly has no remedy, if it disputes the amount the counterparty offers to pay. Under these circumstances, there is no special rule where the dispute concerns the time value of money.
In fact, since Lexington has already paid the claims that it rejected prior to the award, the court must assume that it reads the policies to provide that where claims payment is delayed because of a good faith dispute over coverage, the insured is not due interest for the period of the delay. Orthofix clearly does not agree with that interpretation of the policies. This seems to present yet another dispute concerning policy interpretation. Lexington’s theoiy concerning the res judicata effect of arbitration awards apparently would bar a party from seeking declaratory relief as to a policy provision, if there had been a prior arbitration about a different policy provision. Thus, according to Lexington, if in trying to reach agreement on which rejected claims should be paid, the parties encountered another previously unanticipated dispute concerning the meaning of another policy term, Orthofix would have no right either to arbitrate or litigate the proper meaning of the disputed policy provision, because res judicata (presumably claim preclusion) would bar any further proceedings. That would be a most unfair position in which to place any insured. The court cannot think of any reason that a special rule should apply to disputes concerning the insurer’s obligation to pay interest on wrongfully denied claims.
ORDER
For the foregoing reasons, Lexington’s motion to dismiss Count II is DENIED.

 fhe court denied Lexington’s motion from the bench following oral argument, stating the reasons for its ruling on the record. As the recording device seems not to have recorded all the court’s comments, it issues this opinion as further explanation for its ruling.

Orthofix also argues that the limited language of the arbitration provision in the policies, which requires arbitration only for “a disagreement as to the interpretation of the policy,” did not require arbitration of damage claims, and Orthofix’s answer to Lexington’s arbitration demand expressly reserved its rights to litigate any disputes going beyond policy interpretation in court. The court is inclined toward Orthofix’s view that claims for damages for an unpaid covered claim, or interest on that claim, are not covered by the arbitration provision that appears in the policies. If the parties had not contracted to have damages claims, and concomitant prejudgment interest awards, submitted to arbitration, then the arbitration award cannot be said to have subsumed such claims, which the parties clearly did not actually arbitrate, and claim preclusion will not bar Orthofix from litigating them in Superior Court. See Beals v. Commercial Union Ins. Co., 61 Mass.App.Ct. 189, 195-96 (2004). The court, however, does not need to interpret the scope of the arbitration clause to decide this motion. And, as noted above, interpreting the policies is an undertaking that the parties did agree to submit to binding arbitration.

In other contexts, the SJC has adopted section 84 of the Restatement (Second) of Judgments. See Bourque v. Cape Southport Assoc., LLC, 60 Mass.App.Ct. 271, 274 (2004).